IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. Cr. No. 06-97ML

FERNANDO GONZALEZ-RAMIREZ

Motion for Judgment of Acquittal After Jury Verdict and Discharge

Now comes the defendant by and through his attorney and moves for a Judgment of Acquittal after Jury Verdict and Discharge pursuant to Rule 29 (c) of the Federal Rules of Criminal Procedure. In support of this motion Defendant incorporates by reference the reasons and arguments contained in his Memorandum in Support of this motion.

Defendant,
By his Attorney,

/s/ George J. West

George J. West, Esq. #3052
One Turks Head Place
Suite 312
Providence, RI 02903
Tel. 401-861-9042
Fax. 401-861-0330
Email: Georgew180@aol.com

CERTIFICATE OF SERVICE

On February 16, 2007, I caused the within “Motion for Judgment of Acquittal After Jury Verdict and Discharge” to be filed electronically and is available for viewing and downloading from the ECF system.
Electronic notification:
MARY E. ROGERS Assistant U.S. Attorney
U.S.Attorney'sOffice
50 Kennedy Plaza, 8th
Providence, RI 02903
mary.rogers@usdoj.gov

/s/ George J. West

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. Cr. No. 06-97ML

FERNANDO GONZALEZ-RAMIREZ

Memorandum in Support of Defendant's
Motion for Judgment of Acquittal After Jury Verdict and Discharge

In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. *See* *United States v. Sellers*, 871 F.2d 1019, 1020 (11th Cir.1989). The district court must view the evidence in the light most favorable to the government. *See id.* (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed. 680 (1942), *superceded by rule on other grounds*, *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)). The court must resolve any conflicts in the evidence in favor of the government, *see* *United States v. Taylor*, 972 F.2d 1247, 1250 (11th Cir.1992), and must accept all reasonable inferences that tend to support the government's case. *See* *United States v. Burns*, 597 F.2d 939, 941 (5th Cir.1979). n2 The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See* *Sellers*, 871 F.2d at 1021 (citing *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir.1987)). " 'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Sellers*, 871 F.2d at 1021 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc* ), *aff'd on other*

*grounds*, 462 U.S. 356, 103 S. Ct. 2398, 76 L. Ed. 2d 638 (1983)). A jury is free to choose among reasonable constructions of the evidence. *See Sellers*, 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." *See id. (citing United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.1984)). Each count should be considered separately. United States v. Meneilly 78 F. supp. 2d 95, 114 (E.D.N.Y. 1999).

The indictment charges FERNANDO GONZALEZ-RAMIREZ with Conspiracy to Distribute and to Possess with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One), and Aiding and Abetting Distribution and Possession with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. §2 (Count Two).

The government was required to prove beyond a reasonable doubt the elements of Count One as follows:

First, that from a time unknown but up to and including January 30, 2006, that the agreement specified in the indictment, existed between at least two people, including the Defendant;

Second, the defendant was a party to the conspiracy, that he had knowledge of the conspiracy, that he intended to agree to a conspiracy and that he intended to commit the substantive offense charged.

The government must show two types of intent: intent to agree and intent to commit the substantive offense.

Sufficient proof of specific intent or knowledge or acquiescence in a larger conspiratorial scheme ordinarily is not supplied by inference from isolated acts. U.S. v. DeLutis 722 F.2d 902 (C.A. 1 (R.I.) (1983)

The elements of Count Two are as follows:

The government must establish that the substance involved, if any, was cocaine.

Also it must establish that from a time unknown but up to and including January 30, 2006, the Defendant knowingly aided and abetted others in the possession of the controlled substance;

Second, that the Defendant knew that the substance was a controlled substance; and,

Third, that the Defendant acted intentionally, that is, it was his conscious object to assist another with the possession of the controlled substance with intent to distribute it.

The mere knowledge of or presence at a crime does not create accomplice liability.

The final element the Government must establish is whether there was 5 kilograms or more of cocaine involved?

If the government intends to rely on alleged admissions of the defendant it must establish that the admissions were fairly and accurately related in English.

In this matter the government failed to meet its burden. The government submitted evidence of certain T- III wiretaps, which evidenced telephone conversations between the defendant and an individual by the name of Estroredarcio Bernard, otherwise known as Beligue. Other than brief preliminary phone calls leaving messages and seeking callbacks, the defendant and Beligue had one telephone conversation on January 26, 2006 with a the time mark of 10:56:50 (Gov. Exh. 5) and another time marked 14:05:17 (Gov. Exh. 6) of the same day. In each of these conversations the defendant and Beligue speak briefly. Clearly nowhere in a plain reading of the conversations, as translated, is there any mention of the alleged cocaine, any quantity, any quality, the total amount to be paid, the method of payment, the method of delivery, a place of delivery or any fact indicating they are talking about cocaine. The government through Officer Dorian Rave sought to establish that what was said in the conversation included code which

according to Officer Rave established that the two were conversing about a shipment of cocaine from Colorado to Providence Rhode Island for an agreed-upon price of $19,000 per kilogram of cocaine. Officer Rave began his “de-coding” by looking at the phrase asked by Fernando to Beligue "... are you working" as being an opening inquiry into whether Beligue was buying and selling narcotics. The court ought to reject this inference as being unreal unreasonable. Firstly it is not logical to assume that the defendant’s inquiry not knowing whether Beligue was already "working" would result in an agreement concluded that same day to transfer $104,500.00 in cocaine, without any of the particulars be worked out; other than the allegation that the price was worked out.

The inquiry into whether Beligue was "working" demonstrates the individuals had apparently not been in touch and is not logical to assume that they would have any preconceived understandings between them. Secondly Officer Rave's “decoding” is inherently unreliable in as much as he has no actual experience as either a buyer or seller of kilogram quantities of cocaine. The government wishes to tie Officer Reilly's opinion relative to be price of cocaine at high levels and at street levels together with those Officer Rave's de-coding to form the conclusion that only one scenario can reasonably be discerned. It is submitted that the government has failed to meet its burden of demonstrating that the conversations represent an agreement relative to the distribution of more than 5 kg of cocaine. Exhibit 5 specifically has an uncertain ending and does not reflect an agreement about anything. It also reflects that Beligue was expecting other people to come if the defendant did not “come over". It is not at all clear from a fair reading of the conversation that Beligue was waiting for the defendant in connection with their brief conversation. Further in connection with the government’s Exhibit 6 the conversation still does not result in an agreement and again a fair reading of it does not demonstrate any connection to cocaine distribution or purchase. Again it is indefinite and does not show the basis

of an agreement at all. It is left at Beligue stating that "... well then come over to help you out" and Fernando stating "Yeah?" And Beligue stating "come over to help you out." And Fernando stating "oh then thank you man." While the government through Officer Rave insists that this represents an agreement, the plain reading of the words merely indicates Beligue's intention to help out. It defies logic to assume that Beligue would be being altruistic in a drug deal with a party he apparently hasn't been in touch with in a while. And to do so in the context of having the defendant come from Colorado such that Beligue could "…help you out".

The government's analysis does not stop there however in as much as Officer Rave believes that the defendant made admissions which substantiate his decoding of the conversations. Namely he refers to a conversation which he had with the defendant on September 1, 2006. It must be noted in connection with the September 1, 2006 conversation that the same was conducted in Spanish however it was not transcribed. While Officer Rave made some rough notes which he later shredded he did not actually write a report until September 18, 2006. It should also be noted that Officer Rave has no formal college or professional training in the Spanish-language and relied upon his having grown up speaking Spanish in his household and his three years of high school Spanish. Officer rave claims that in that conversation the defendant stated that he felt responsible for the arrest of his nephew Aldalberto González. Further that the reason he felt responsible was that he had asked him to do a favor. Officer Rave in relating this account stated that the defendant had gone so far as to say that he couldn't come to Providence and had asked his nephew to do so. On cross-examination it was born out that Officer Rave's report did say that the defendant had said that he had asked his nephew to do him a favor. However there was no clear statement of what that favor was in the report. The defendant in order to aid his nephew, stated that he had limited knowledge of certain Mexican cartels. The conversation then turned to the effort to aid his nephew. The government points out

other parts of the report made by Officer Rave which refer to shipment to Rhode Island. The account given by Officer Rave should not be accepted as an accurate account of the conversation he had with the defendant in as much as Officer Rave admitted he's unable to translate 30 to 40 words from Spanish to Enlish accurately after the elapse of short periods of time. The time until preparation of the report here was 17 days. In order to rely on the English translation the court ought to look for indications of reliability and it is submitted the same are not present here. It is clear that Officer Rave did not develop any of the particulars of the offense for the two charges alleged. Namely there is no inquiry as to the source of the cocaine, how the quantity was determined, the method of delivery, the manner of delivery, the place of delivery, the quality, how the payment of the purchase price would be made, whether the payment had been made or how much. If this report is to be accepted as a fair and accurate summary of admissions made by the defendant it is submitted it is reasonable to assume it would have had a full account of the matters integral to the offense.

The government also submits evidence that the defendant's nephew was arrested in connection with the delivery of the cocaine and he was operating a Volkswagen Jetta with Colorado license plates as being further evidence confirming both Defendant’s agreement and his aiding and abetting of the distribution. The mere presence of Aldalberto Gonzales in Providence does not establish the scenario and represents an unreasonable inference. Firstly this gentleman arrived on Monday, January 30, 2006. In governments Exhibit 6 the conversation related to time frames occurring on Saturday and Sunday morning. Further at no time did the government observe any cocaine in the Volkswagen Jetta at the time it first arrived in Providence at the California liquors location. Further the Volkswagen Jetta then followed a Mr. Severino to his warehouse at 95 Hathaway Street in Providence. Upon arriving at the warehouse the Jetta entered the same through the bay door and the door was closed behind it. The Jetta stayed

approximately an hour and a half and then left. Agents obtaining Mr. Severino's permission searched the warehouse and found a duffle bag in a back office with approximately 5.5 kilos of cocaine. The government had not searched the interior of the warehouse before, nor did they have any idea what was in the warehouse prior to the time the Jetta arrived. At the time of the government search there was a van owned by Severino parked in the bay of the warehouse in the spot the jetta had been previously located. The government found evidence of torn coverings and gasoline soaked rags in a place remote from the duffle bag. The place was in the bay area behind a refrigerator. Officer Jacobson testified that he believed that the back seat of the Jetta from a subsequent examination indicated it had been previously removed and replaced, that it represented a hide and that there was ready access to the gas tank and a screw driver located in that location. The inference the government asked to be drawn is that the drugs came from the car. But such evidence was not brought out at trial and it is submitted that the inference that the cocaine came from the car represents a huge inference unsupported by any physical observations other than the account of the car containing what looked to the officer as a hide. Clearly the same conditions in the vehicle could have been from any number of activities including minor repair, cleaning or otherwise. To surmise the same could only be for transporting the drugs found elsewhere in Mr. Severino's warehouse is unreasonable. Mr. Severino had been the object of intense scrutiny by the government to the extent that the government installed a pole camera outside his warehouse. They had been watching him for money laundering in connection with narcotics and drugs trafficking. The business he operated at the location was a company that moved items to the Domincan Republic. There was regular vehicle traffic in and out of the warehouse. Anyone could have transported the drugs found in Mr. Severino's office at any time. It is an unreasonable inference to conclude the same came from the Jetta. Therefore the

government failed to establish the relevancy of the drugs seized at the warehouse to the instant charges.

The forensics in this case further exclude the defendant in this matter. Firstly the government shredded without testing the discarded wrappers found behind the refrigerator. No testing was done for fingerprints as Officer Jacobson claimed the same was impossible due to being soaked in gasoline. No testing of the same was done to verify that assertion. Secondly the wrappings of the kilos seized failed to reveal any fingerprints. As Defendant's exhibit B bore out, the government did not even test this evidence for the defendant's fingerprints. Further indicating the government didn't expect to find his fingerprints thereon. The FBI didn't submit his name to be checked. No reasonable inference can be drawn from the governments 27 a, b, and c that the defendant aided and abetted or in any way agreed to or distributed the same. The simple fact is that the government did not meet its burden in establishing that the cocaine found in the warehouse came from the Jetta with proof beyond a reasonable doubt. Such a conclusion would be the result of pure conjecture. Without the context of seizure of the cocaine the case against Mr. Gonzalez losses it contextual underpinning and must fail.

For the reasons stated therefore the defendant's Motion for Judgment of Acquittal ought to be granted.

Defendant,
By his Attorney,

/s/ George J. West

George J. West, Esq. #3052
One Turks Head Place
Suite 312
Providence, RI 02903

Tel. 401-861-9042
Fax. 401-861-0330
Email: Georgew180@aol.com

CERTIFICATE OF SERVICE

On February 16, 2007, I caused the within “Memorandum in Support of Motion for Judgment of Acquittal After Jury Verdict and Discharge” to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:
MARY E. ROGERS Assistant U.S. Attorney
U.S.Attorney'sOffice
50 Kennedy Plaza, 8th
Providence, RI 02903
mary.rogers@usdoj.gov

/s/ George J. West

____________________________