IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. Cr. No. 06-97ML

FERNANDO GONZALEZ-RAMIREZ

Motion for New Trial

Now comes the defendant by and through his attorney and moves for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In support of this motion Defendant incorporates by reference the reasons and arguments contained in his Memorandum in Support of this motion.

Defendant,
By his Attorney,

/s/ George J. West

George J. West, Esq. #3052
One Turks Head Place
Suite 312
Providence, RI 02903
Tel. 401-861-9042
Fax. 401-861-0330
Email: Georgew180@aol.com

CERTIFICATE OF SERVICE

On February 16, 2007, I caused the within "Motion for New Trial" to be filed electronically and is available for viewing and downloading from the ECF system.
Electronic notification:
MARY E. ROGERS Assistant U.S. Attorney
U.S.Attorney'sOffice
50 Kennedy Plaza, 8th
Providence, RI 02903
mary.rogers@usdoj.gov

/s/ George J. West

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. Cr. No. 06-97ML

FERNANDO GONZALEZ-RAMIREZ

Memorandum in Support of Defendant's
Motion for New Trial

A motion for new trial is sought here pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Where the motion is based on any "other grounds," the trial court may grant a new trial where any error is of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." WRIGHT, FEDERAL PRACTICE & PROCEDURE § 556 (3d ed. 2004). WRIGHT, § 556 provides an illustrative list of the types of errors that might justify a motion for new trial on "other grounds": denial of a separate trial, absence of witnesses, objections to jurors or the jury selection process, failure to provide discovery, the lack of an intelligent waiver of trial by jury, incompetency to stand trial, absence of defendant from the trial, refusal to allow defendant to be free on bail during the trial, exclusion of evidence, admission of improper evidence, accepting a plea of guilty from a codefendant during trial, variance between the indictment or information and the proof, instructions to the jury, and allowing the jury to separate during deliberations. Also See WRIGHT, § 551 (stating that a motion for new trial based not on newly discovered evidence, but on errors or other grounds "should be neither favored nor disfavored, and the question is only what the interest of justice requires."). United States v. Wall, 389 F.3d 457, 474 (5th Cir. 2004) It has been held that improper denial of a motion for continuance was grounds for granting motion for new trial.

United States v. Vesey 330 F.3d 1070 (8th Cir. 2003) . Further it has been held that evidentiary errors during trial have been held to be grounds for new trial. United States v. Tory 52 F. 3d 207 (9th Cir. 1995) and finally insufficient evidence is similarly grounds for new trial. United States v. Washington 184 F. 3d 653, 658 (7th Cir. 1999) see also United States v. Kwan, 2003 WL 22973515 (S. D. N. Y. 2003) ( court must examine all of the facts and circumstances to determine if there is manifest injustice requiring a new trial). In determining whether to grant a new trial, the court may properly consider the credibility of the witnesses, and may grant a new trial "if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice. United States v. Dodd, 391 F.3d 930, 935-936 (8th cir. 2004), United States v. Kellington, 217 F.3d 108, 1097 (9th Cir. 2000), United States v. Washington, 184 F.3d. 653, 657-659 (7th Cir. 1999).

It is submitted that in the instant matter a New Trial should be ordered in the interest of Justice.

I. The first ground for the motion for new trial it is respectfully is the improper denial of the Defendant's Motion for Continuance filed on the eve of trial which was filed in conjunction with defendant's sealed motion. That motion was brought pursuant to the facts alleged in that sealed motion and memorandum which said facts are further incorporated by reference here without restating the same to preserve the sealed nature of the same. That motion was based upon information and belief supplied to counsel by the U.S. Marshal Service that the defendant sustained an injury on February 6-7, 2007. Such incident was deemed serious by the Marshal service and required medical attention at a local hospital and sutures to repair the damage. See Court's sealed Exhibit 1 form sealed proceedings. Moreover the defendant on February 6, 2007, after a lengthy colloquy with U.S. M. J. Martin adamantly insisted, against the advice of

counsel, (which speaks to his lack of ability to assist in his defense) that he continued to wear his prison garb, rather than to change into street clothes. While the Magistrate Judge found this behavior distinctly against the defendant's interest, at that time, the empanelment continued based on the defendant's insistence. Moreover the defendant reportedly made a statement to U.S. Marshals on February 6, 2007 stating his rationale for proceeding with the trial in this matter. That statement could be viewed as not rationally related to the principal constitutional purposes for the conduct of the trial. It is respectfully submitted that standing alone any one of these matters may not have warranted the continuance. Taken together it is submitted that a continuance for the reasons stated ought to have been granted to preserve defendant's due process rights.

See Drope v. Mo. 420 U.S. 162,178-83 (1975), See also Pate v. Robinson, 383 U.S. 375, 385-386 (1966), Dusky v. United States 362 U.S. 402, (1960) (per curiam). Here the court did inquire of counsel in the sealed hearing as to counsel's understanding of whether Mr. Gonzalez knew why he was at court on the day of the trial and counsel responded that he did know he was there for his trial. It is also true that Marshal Remington informed the Court that defendant talked to a psychologist at the Wyatt Detention facility. It was learned that the talk referred to by the Marshall was a brief conversation with a psychologist of what was perceived as being approximately five minutes prior to the defendant being taken to the hospital. Marshal Remington also reported the defendant did not appear confused and was aware of where he was and why he was there. But it is respectfully submitted that this is not a sufficient inquiry. It is maintained that a developed, professional inquiry was necessary. Defendant maintains that the continuance ought to have been granted for the reasons stated in the sealed motion, supporting memorandum and the Court sealed exhibit 1.

II. It respectfully submitted that the government failed to establish a sufficient relevant connection between the cocaine seized at 95 Hathaway Street warehouse and the Defendant and therefore this evidence ought to have been excluded. The testimony was such that at no time was the Colorado vehicle under observation when the alleged loading of the cocaine occurred. At no time was any individual observed carrying anything to or from the vehicle. At no time was anyone observed unloading the vehicle in question. The cocaine ought not to have been admitted based on the failure of proof. It was clear that the warehouse was being watched by police for a long period of time for suspected money laundering and narcotics trafficking of Mr. Severino. It was clear that vehicle traffic to and from the bay of the warehouse occurred often with no observation of what was loaded or unloaded in the warehouse. There was no probative evidence that the cocaine later found to be in a room removed from the bay in a black duffel bag came from the VW Jetta operated by Adalberto Gonzalez. It is clear that the cocaine so discovered by police could have been present in the warehouse long before the VW Jetta from Coloardo arrived and or after the Jetta left as police found a vehicle owned by Mr. Severino in the bay when they searched it. The same reason is put forward to support the relevancy objections to the photographs of the kilos of cocaine and items in the warehouse. The same ought to have been excluded.

Additionally the evidence offered by Officer Rave as to admissions attributed to the defendant ought to have been excluded in as much as the defendant's voir dire of Officer Rave clearly established that he lacked any professional training as an interpreter and that he lacked any college courses in the Spanish language. He simply spoke Spanish at home and on the job and had 3 years of high school Spanish. Further he acknowledged that he could not render an accurate translation of 30 to 40 words when a lapse of time occurred from hearing the same. Clearly here he did not attempt a report of his conversation with the defendant for 17 days after

he spoke to him on the phone in Spanish. The notes he made from the conversation he shredded after making the report. The officer was clearly not a disinterested party to the prosecution of the instant matter. Under such circumstances it is submitted the testimony recounting alleged admissions ought to have been excluded. See U.S. v. Nazemian 948 F. 2d 522 (9th Cir. 1991), The People of the State of New York v. Romero 78 N.Y. 2d 355 (Court of Appeals of New York, 1991), People v. Gutierrez 916 P.2d 598 (Court of Appeals of Colorado, Div. One, 1995). Clearly the congress by virtue of 18 U.S. C. § 1827-1828 (The Court Interpreters Act of 1978) has made certain that interpreters working in federal court are highly trained, tested and certified before they are allowed to interpret before the court. That is for the logical reason that there be a high degree of confidence that what is said in court is conveyed to the non-English speaking party and conversely to the court with a high degree of confidence that an accurate understanding of what has been said is rendered to the party. Here no such assurance is present. The evidence ought to have been excluded.

III. It is submitted that there was insufficient evidence to sustain the conviction.

The indictment charges FERNANDO GONZALEZ-RAMIREZ with Conspiracy to Distribute and to Possess with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One), and Aiding and Abetting Distribution and Possession with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. §2 (Count Two).

The government was required to prove beyond a reasonable doubt the elements of Count One as follows:

First, that from a time unknown but up to and including January 30, 2006, that the agreement specified in the indictment, existed between at least two people, including the Defendant;

Second, the defendant was a party to the conspiracy, that he had knowledge of the conspiracy, that he intended to agree to a conspiracy and that he intended to commit the substantive offense charged.

The government must show two types of intent: intent to agree and intent to commit the substantive offense.

Sufficient proof of specific intent or knowledge or acquiescence in a larger conspiratorial scheme ordinarily is not supplied by inference from isolated acts. U.S. v. DeLutis 722 F.2d 902 (C.A. 1 (R.I.) (1983)

The elements of Count Two are as follows:

The government must establish that the substance involved, if any, was cocaine.

Also it must establish that from a time unknown but up to and including January 30, 2006, the Defendant knowingly aided and abetted others in the possession of the controlled substance;

Second, that the Defendant knew that the substance was a controlled substance; and,

Third, that the Defendant acted intentionally, that is, it was his conscious object to assist another with the possession of the controlled substance with intent to distribute it.

The mere knowledge of or presence at a crime does not create accomplice liability.

The final element the Government must establish is whether there was 5 kilograms or more of cocaine involved?

If the government intends to rely on alleged admissions of the defendant it must establish that the admissions were fairly and accurately related in English.

In this matter the government failed to meet its burden. The government submitted evidence of certain T- III wiretaps, which evidenced telephone conversations between the defendant and an individual by the name of Estroredarcio Bernard, otherwise known as Beligue. Other than brief preliminary phone calls leaving messages and seeking callbacks, the defendant and Beligue had one telephone conversation on January 26, 2006 with a the time mark of 10:56:50 (Gov. Exh. 5) and another time marked 14:05:17 (Gov. Exh. 6) of the same day. In each of these conversations the defendant and Beligue speak briefly. Clearly nowhere in a plain reading of the conversations, as translated, is there any mention of the alleged cocaine, any quantity, any quality, the total amount to be paid, the method of payment, the method of delivery, a place of delivery or any fact indicating they are talking about cocaine. The government through Officer Dorian Rave sought to establish that what was said in the conversation included code which according to Officer Rave established that the two were conversing about a shipment of cocaine from Colorado to Providence Rhode Island for an agreed-upon price of $19,000 per kilogram of cocaine. Officer Rave began his “de-coding” by looking at the phrase asked by Fernando to Beligue "... are you working" as being an opening inquiry into whether Beligue was buying and selling narcotics. The court ought to reject this inference as being unreal unreasonable. Firstly it is not logical to assume that the defendant’s inquiry not knowing whether Beligue was already "working" would result in an agreement concluded that same day to transfer $104,500.00 in cocaine, without any of the particulars be worked out; other than the allegation that the price was worked out.

The inquiry into whether Beligue was "working" demonstrates the individuals had apparently not been in touch and is not logical to assume that they would have any preconceived

understandings between them. Secondly Officer Rave's “decoding” is inherently unreliable in as much as he has no actual experience as either a buyer or seller of kilogram quantities of cocaine. The government wishes to tie Officer Reilly's opinion relative to be price of cocaine at high levels and at street levels together with those Officer Rave's de-coding to form the conclusion that only one scenario can reasonably be discerned. It is submitted that the government has failed to meet its burden of demonstrating that the conversations represent an agreement relative to the distribution of more than 5 kg of cocaine. Exhibit 5 specifically has an uncertain ending and does not reflect an agreement about anything. It also reflects that Beligue was expecting other people to come if the defendant did not “come over". It is not at all clear from a fair reading of the conversation that Beligue was waiting for the defendant in connection with their brief conversation. Further in connection with the government’s Exhibit 6 the conversation still does not result in an agreement and again a fair reading of it does not demonstrate any connection to cocaine distribution or purchase. Again it is indefinite and does not show the basis of an agreement at all. It is left at Beligue stating that "... well then come over to help you out" and Fernando stating "Yeah?" And Beligue stating "come over to help you out." And Fernando stating "oh then thank you man." While the government through Officer Rave insists that this represents an agreement, the plain reading of the words merely indicates Beligue's intention to help out. It defies logic to assume that Beligue would be being altruistic in a drug deal with a party he apparently hasn't been in touch with in a while. And to do so in the context of having the defendant come from Colorado such that Beligue could "…help you out".

The government's analysis does not stop there however in as much as Officer Rave believes that the defendant made admissions which substantiate his decoding of the conversations. Namely he refers to a conversation which he had with the defendant on September 1, 2006. It must be noted in connection with the September 1, 2006 conversation that

the same was conducted in Spanish however it was not transcribed. While Officer Rave made some rough notes which he later shredded he did not actually write a report until September 18, 2006. It should also be noted that Officer Rave has no formal college or professional training in the Spanish-language and relied upon his having grown up speaking Spanish in his household and his three years of high school Spanish. Officer rave claims that in that conversation the defendant stated that he felt responsible for the arrest of his nephew Aldalberto González. Further that the reason he felt responsible was that he had asked him to do a favor. Officer Rave in relating this account stated that the defendant had gone so far as to say that he couldn't come to Providence and had asked his nephew to do so. On cross-examination it was born out that Officer Rave's report did say that the defendant had said that he had asked his nephew to do him a favor. However there was no clear statement of what that favor was in the report. The defendant in order to aid his nephew, stated that he had limited knowledge of certain Mexican cartels. The conversation then turned to the effort to aid his nephew. The government points out other parts of the report made by Officer Rave which refer to shipment to Rhode Island. The account given by Officer Rave should not be accepted as an accurate account of the conversation he had with the defendant in as much as Officer Rave admitted he's unable to translate 30 to 40 words from Spanish to Enlish accurately after the elapse of short periods of time. The time until preparation of the report here was 17 days. In order to rely on the English translation the court ought to look for indications of reliability and it is submitted the same are not present here. It is clear that Officer Rave did not develop any of the particulars of the offense for the two charges alleged. Namely there is no inquiry as to the source of the cocaine, how the quantity was determined, the method of delivery, the manner of delivery, the place of delivery, the quality, how the payment of the purchase price would be made, whether the payment had been made or how much. If this report is to be accepted as a fair and accurate summary of admissions made by

the defendant it is submitted it is reasonable to assume it would have had a full account of the matters integral to the offense.

The government also submits evidence that the defendant's nephew was arrested in connection with the delivery of the cocaine and he was operating a Volkswagen Jetta with Colorado license plates as being further evidence confirming both Defendant's agreement and his aiding and abetting of the distribution. The mere presence of Aldalberto Gonzales in Providence does not establish the scenario and represents an unreasonable inference. Firstly this gentleman arrived on Monday, January 30, 2006. In governments Exhibit 6 the conversation related to time frames occurring on Saturday and Sunday morning. Further at no time did the government observe any cocaine in the Volkswagen Jetta at the time it first arrived in Providence at the California liquors location. Further the Volkswagen Jetta then followed a Mr. Severino to his warehouse at 95 Hathaway Street in Providence. Upon arriving at the warehouse the Jetta entered the same through the bay door and the door was closed behind it. The Jetta stayed approximately an hour and a half and then left. Agents obtaining Mr. Severino's permission searched the warehouse and found a duffle bag in a back office with approximately 5.5 kilos of cocaine. The government had not searched the interior of the warehouse before, nor did they have any idea what was in the warehouse prior to the time the Jetta arrived. At the time of the government search there was a van owned by Severino parked in the bay of the warehouse in the spot the jetta had been previously located. The government found evidence of torn coverings and gasoline soaked rags in a place remote from the duffle bag. The place was in the bay area behind a refrigerator. Officer Jacobson testified that he believed that the back seat of the Jetta from a subsequent examination indicated it had been previously removed and replaced, that it represented a hide and that there was ready access to the gas tank and a screw driver located in that location. The inference the government asked to be drawn is that the drugs came from the

car. But such evidence was not brought out at trial and it is submitted that the inference that the cocaine came from the car represents a huge inference unsupported by any physical observations other than the account of the car containing what looked to the officer as a hide. The officer also points to the garbage bag with gasoline soaked rags and torn packaging. This evidence was found behind a refrigerator in the Bay area. The police tie this evidence to their report of access being available in the Jetta to its gas tank and a screw driver found in the vicinity of that part of the car. Clearly the same conditions in the vehicle could have been from any number of activities including minor repair, tools left by a mechanic, cleaning or otherwise. There simply were no personal observations of anything coming from the Jetta to substantiate the claims. To surmise the same could only be from the transport of the cocaine found elsewhere in Mr. Severino's warehouse is unreasonable. Mr. Severino had been the object of intense scrutiny by the government to the extent that the government installed a pole camera outside his warehouse. They had been watching him for money laundering in connection with narcotics and drugs trafficking. The business he operated at the location was a company that moved items to the Domincan Republic. There was regular vehicle traffic in and out of the warehouse. Anyone could have transported the drugs found in Mr. Severino's office at any time. It is an unreasonable inference to conclude the same came from the Jetta. Therefore the government failed to establish the relevancy of the drugs seized at the warehouse to the instant charges.

The forensics in this case further exclude the defendant in this matter. Firstly the government shredded without testing the discarded wrappers found behind the refrigerator. No testing was done for fingerprints as Officer Jacobson claimed the same was impossible due to being soaked in gasoline. No testing of the same was done to verify that assertion. Secondly the wrappings of the kilos seized failed to reveal any fingerprints. As Defendant's exhibit B bore

out, the government did not even test this evidence for the defendant's fingerprints. Further indicating the government didn't expect to find his fingerprints thereon. The FBI didn't submit his name to be checked. No reasonable inference can be drawn from the governments 27 a, b, and c that the defendant aided and abetted or in any way agreed to or distributed the same. The simple fact is that the government did not meet its burden in establishing that the cocaine found in the warehouse came from the Jetta with proof beyond a reasonable doubt. Such a conclusion would be the result of pure conjecture. Without the context of seizure of the cocaine the case against Mr. Gonzalez losses it contextual underpinning and must fail.

For the reasons stated therefore the defendant's Motion for New Trial ought to be granted.

Defendant,
By his Attorney,

/s/ George J. West

George J. West, Esq. #3052
One Turks Head Place
Suite 312
Providence, RI 02903
Tel. 401-861-9042
Fax. 401-861-0330
Email: Georgew180@aol.com

CERTIFICATE OF SERVICE

On February 16, 2007, I caused the within "Memorandum in Support of Motion for New Trial" to be filed electronically and is available for viewing and downloading from the ECF system.
Electronic notification:
MARY E. ROGERS Assistant U.S. Attorney

U.S.Attorney'sOffice
50 Kennedy Plaza, 8th
Providence, RI 02903
mary.rogers@usdoj.gov

/s/ George J. West