IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
vs. ) Cr. No. 06-097-01ML
)
FERNANDO GONZALEZ-RAMIREZ )

**DEFENDANT'S MOTION TO DISMISS**
**21 U.S.C. § 851 INFORMATION**

NOW comes the defendant and moves to dismiss the 851 Information filed in this case by the Government. The defendant maintains that the filing of the 851 Information in this case violates his rights pursuant to the United States Constitution. In further support of this motion, the defendant hereby incorporates by reference the attached Memorandum of Law in Support of Motion to Dismiss.

Respectfully submitted,
Defendant Fernando Gonzalez-Ramirez
By his attorney,

/s/ George J. West
____________________________
George J. West, Esq. #3052
One Turks Head Place, Suite 312
Providence, RI 02903-2215
(401) 861-9042
(401) 861-0330 Fax

CERTIFICATION

I hereby certify that on this 2nd day of May 2007, I forwarded a copy of the within Objection to Mary Rogers, Esq., A.U.S.A. mary.rogers@usdoj.gov, U. S. Department of Justice, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 via the USDC's ECF system.

/s/George J. West

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. CR. No. 06-097-01ML

FERNADO GONZALEZ-RAMIREZ

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
21 U.S.C. § 851 INFORMATION AND
OBJECTION TO § 851 ENHANCEMENT

Challenge to Mandatory Minimum.

Defendant, Fernando Gonzalez-Ramirez, is facing a mandatory sentence of at least twenty years in prison. This mandatory twenty year sentence is a result of his conviction under 21 U.S.C. § 841((a)(1) and (b)(1)(A); §846; 18 USC §2 and the prosecution's pre-trial filing of an information under 21 U.S.C. § 851 concerning Mr. Gonzalez-Ramirez's prior convictions. The current matter involved a conspiracy and aiding and abetting an intent to distribute a total of 5.497 kilograms of cocaine base. The predicate cases for §851 purposes involved apparent small street quantities. See Presentence Investigation Report, Paragraphs 26 and 27. It is respectfully submitted any such sentence imposed here would be unconstitutional. Four separate grounds are suggested, as follows:

(1) The prosecution's filing of an information under 21 U.S.C. § 851, which rendered Mr. Gonzalez-Ramirez "eligible" for a mandatory twenty year sentence, and the prosecution's continued pursuit of a twenty year sentence have penalized Mr. Gonzalez-Ramirez for his decision to exercise his Sixth Amendment right to trial by jury;

(2) The vesting of sole discretion in the prosecution under §851 as to the decision to use Mr. Gonzalez-Ramirez's prior convictions to enhance his sentence violates the separation of powers doctrine;

(3) The removal of any discretion from the Court to consider Mr. Gonzalez-Ramirez's background, the nature of his prior offenses, and the circumstances of this offense, deprives Mr. Gonzalez-Ramirez of his Fifth Amendment due process right to an individualized sentencing determination; and

(4) The aggrievating facts of the prior convictions were not indicted and further were not proven to a jury beyond a reasonable doubt thus precluding their use for the purpose of enhancing Mr. Gonzalez-Ramirez's sentence outside of the otherwise applicable sentencing range.

In raising these arguments, we ask the Court to recognize the increasing ineffectiveness, inflexibility, and harshness of federal sentencing mandatory minimums. Importantly, we are not asking the Court to step beyond its judicial role and legislate new policy. Rather the request is believed based solidly on legal principles including: the right to a trial by jury, the right to due process, and the separation of powers. These are core principles. As is demonstrated below, application of these core principles prevents imposition of a twenty year mandatory sentence in this case.

BACKGROUND

A. Relevant Factual and Procedural Background

The government filed its Information pursuant to §851. That section provides that for any defendant in a narcotics case facing an enhanced

punishment "by reason of one or more prior convictions," such an enhanced sentence will only be imposed if "the United States attorney files an information with the court...stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). The information identified a either of a prior felony drug conviction against Mr. Gonzalez-Ramirez. Because Mr. Gonzalez-Ramirez was charged in the instant indictment with a violation of 21 U.S.C. § 841(b)(1)(B), the government's filing of the § 851 information brought into play the following language in § 841(b)(1)(A): "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than twenty years and not more than life imprisonment...."

B. Upheaval in Federal Sentencing Law

When the Court imposes its sentence on Mr. Gonzalez-Ramirez, it will do so at a time of great uncertainty in the law. As the Court knows, recent developments have raised doubts about the prevailing sentencing practices during the past two decades.

The central focus of federal sentencing policy since the early 1980s has been to limit judges' discretion in imposing sentences. Congress has accomplished this through, for example, the Sentencing Reform Act of 1984, which led to the promulgation of the United States Sentencing Guidelines. Likewise, Congress has enacted numerous mandatory minimum sentences, particularly related to drug crimes, which have resulted in enhanced sentences based on drug quantities and, as in this case, prior convictions. These policies have led to the near-total vesting of sentencing discretion in the prosecutors who

decide what crimes to charge. Sentences have grown longer, and judges have effectively been taken out of the calculus until the Supreme Court's ruling in Booker[1].

Indeed, critiques of federal sentencing were initiated by Supreme Court Justice Anthony M. Kennedy, who, in an August 9, 2003, address to the American Bar Association, "raised fundamental questions about the fairness, wisdom and efficacy of criminal punishment throughout the United States." American Bar Association Justice Kennedy Commission, Report to the House of Delegates, Res. 121A: Recommendations on Punishment, Incarceration, and Sentencing, at 3 (Aug. 2004), *available at*, http://www.abanet.org/media/kencomm/rep121a.pdf ("ABA Report"). Justice Kennedy's critiques of sentencing policy were wide-ranging. He called attention to the problems of lengthy sentences of incarceration, *id.* at 4 ("When it costs so much more to incarcerate a prisoner than to educate a child, we should take special care to ensure that we are not incarcerating too many persons for too long."), called for the return of judicial discretion in sentencing, *id.* at 5 ("The trial judge is the one actor in the system most experienced with exercising discretion in a transparent, open, and reasoned way. Most of the sentencing discretion should be with the judge, not the prosecutors."), and expressly rejected the rationale behind mandatory minimum sentences, *id.* ("I can accept neither the necessity nor the wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise and unjust.").

[1] United States v. Booker, 543 U.S. 220 (U.S. 2005)

At the conclusion of his address, Justice Kennedy asked the ABA "to study these matters, and to help start a new public discussion about the prison system." *Id.* at 6. The ABA granted Justice Kennedy's request. It formed the Justice Kennedy Commission, and, after a year of study, in August of 2004, the Commission released four separate resolutions. For purposes of this case, the Commission's most important contribution was its call for an elimination of mandatory minimum sentences on the grounds that they are "inconsistent with the notion that sentences should consider all of the relevant circumstances of an offense" and that they "tend to shift sentencing discretion away from courts to prosecutors." *Id.* at 27.

During the one-year period in which the ABA was engaging Justice Kennedy's call for a "new public discussion" on sentencing, there were several other developments in the criminal justice system raising further doubt as to the validity of current sentencing law. On June 18, 2004, Chief Judge William G. Young of the U.S. District Court for the District of Massachusetts issued a 117-page decision harshly criticizing the Department of Justice for having taken complete control over sentencing decisions in the federal system. *United States v. Green*, 2004 WL 1381101 (D. Mass. June 18, 2004). As Chief Judge Young explained, federal courts are partly to blame for this phenomenon:

> Against the centrally organized efforts of the Department [of Justice] to manipulate sentences and sentencing policy to achieve the perceived goals of law enforcement, the efforts of individual judges to control the whirlwind have been but a weak reed--unnoticed, derided, and largely rejected. As a result, the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently

> slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way.

*Id.* at *3.

In addition to criticizing the Department of Justice's methods to encourage guilty pleas and thereby reduce jury trials, such as "charge bargaining," *id.* at *7 (describing Department's dropping of charges to result in lesser sentences and encourage plea bargaining), and "fact bargaining," *id.* at *9 (describing Department's willingness to "swallow[] the drugs" or "the gun" to similarly result in lesser sentences and encourage plea bargaining), Chief Judge Young ruled that in the cases before him drug quantities which had not been proven to a jury beyond a reasonable doubt could not be used to enhance the defendants' sentences under the Guidelines. *Id.* at *17.

Chief Judge Young's decision in this regard proved prescient, for, less than a week later, on June 24, 2004, the Supreme Court issued its decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which invalidated a Washington state sentence on the same grounds – that facts determined by a judge under a preponderance of the evidence standard could not, consistent with the Sixth Amendment right to a jury trial, be used to enhance a defendant's sentence above a standard guideline range.

### A. The Government's Conduct in Seeking a Mandatory Minimum Twenty Year Sentence Has Penalized Mr. Gonzalez-Ramirez For His Decision to go to Trial And Has Thus Violated His Sixth Amendment Right to a Jury Trial.

We argue here that the prosecutor has a lever to hold over a defendant who chooses to go to trial. Here absolute discretion exists in the prosecutor to determine who gets an enhance sentence in these types of circumstances.

The problems with § 851 are not limited to a local situation but are noted nationally. As noted by Chief Judge Young in *Green*, the misuse of sentencing enhancements under provisions like § 851 is common in the federal system. "Departmental attorneys are...able to threaten to give such notice – therefore ratcheting up sentences in applicable cases – whenever an accused proves recalcitrant about copping a plea. Make no mistake – this happens." *Green*, 2004 WL 1381101, at *7. Prosecutors have complete discretion over the filing of the § 851 information. They are free to "swallow" the prior convictions, and, if they do not file the information, the Court is precluded from applying a statutory sentencing enhancement based on prior convictions. Nationally naturally, a promise to "swallow" prior convictions which could lead to steep increases in a defendant's sentencing exposure is a powerful tool to compel a defendant to plead guilty and/or cooperate with the government. When the converse occurs, and a defendant exercises a constitutional right, and, in the process, the incentive for the government to *not* "swallow" the prior convictions and pursue the sentencing enhancement grows. In short, the built-in incentives of federal sentencing law, through provisions such as § 851 and 18 U.S.C. § 3553(e) demand that prosecutors penalize a defendant's exercise of a constitutional right, and defendants pay dearly for this penalty. *See Green*, 2004 WL 1381101, at *11 n.93 (citing *Berthoff v. United States*, 140 F. Supp. 2d 50, 67-68 & n.33 (D. Mass.

2001)) ("As of 1999, there was a 500 percent differential in punishment between those who exercised their rights and those who waived them and cooperated.").

Mr. Gonzalez-Ramirez's decision to go to trial where he was convicted now brings the stark reality of the mandatory penalty. The filing of the § 851 information may have been a prosecution decision in this case but it is submitted that these unfettered decisions, to file or not to file especially as played out in this case does not appear supported by the quantity or facts. At bottom, the filing of the §851 has served to penalize Mr. Gonzalez-Ramirez for exercising his constitutional right to a jury trial. This should not be permitted, and Mr. Gonzalez-Ramirez should not be subject to a mandatory sentence.

### B. Removing Sentencing Discretion From The Courts and Requiring Imposition of a Mandatory Sentence at The Will of The Prosecutor Violates The Separation of Powers.

At the outset of the sentencing reform movement in the early 1980s, the Sentencing Guidelines were challenged as delegating legislative authority to an administrative agency (the Sentencing Commission) in violation of the separation of powers doctrine. In *Mistretta v. United States*, 488 U.S. 361 (1989), the Supreme Court rejected this challenge and upheld the constitutionality of the guidelines. It did so, in part, on the ground that the Sentencing Commission had been placed in the judiciary. *Id*. at 390-91. In holding the Guidelines constitutional, however, the Court noted an important caveat: "had Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or

unconstitutionally had united the power to prosecute and the power to sentence within one Branch." *Id.* at 391 n.17.

The constitutional questions the Court envisioned in *Mistretta* are now ripe. *See Green*, 2004 WL 1381101, at *31 (noting that *Mistretta* held the Guidelines constitutional, but stating that "it is not clear whether the empirical assumptions on which that holding rested are true today"). Specifically, since *Mistretta*, the growing prevalence of mandatory minimum sentences has united the power of prosecution and sentencing within the Executive Branch.[2]

For example, in 1991, a United States Sentencing Commission report documented that during just a five-year period, the percentage of cases where a defendant's conduct rendered the defendant eligible for a mandatory minimum sentence doubled from 10 to 20 percent. U.S. Sentencing Commission, *Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, at 38 (Aug. 1991).[3] Moreover, the report showed that in those

---

[2] The recently enacted Feeney Amendment, which provides for various expansions of the limitations on judicial discretion in sentencing and prohibits judicial representatives on the U.S. Sentencing Commission from constituting a majority, has also greatly changed the empirical assumptions underlying the *Mistretta* ruling. *See United States v. Detwiler*, 2004 WL 2244532, at *10-11 (D. Or. Oct. 5, 2004) (finding Guidelines, as amended by Feeney Amendment, unconstitutional for concentrating sentencing power in the executive branch and stating that "[f]or too long, the Judicial Branch has remained silent in the face of repeated encroachments by the other two Branches"); *Green*, 2004 WL 1381101, at *12 ("The stark facts of the passage of the Feeney Amendment sadly demonstrate that today the district court judiciary is nothing more than a nuisance to the Departmental drive to control all aspects of sentencing."); *United States v. Mendoza*, 2004 WL 1191118, at *7 (C.D. Cal. Jan. 12, 2004) (holding Feeney Amendment requirement of reporting departure information to Department of Justice was an unconstitutional "power grab by one branch of government over another branch").

[3] The report is available at http://www.ussc.gov/r_congress/MANMIN.PDF.

cases where a defendant was eligible for a mandatory minimum sentence as a result of prior convictions, prosecutors exercised their discretion to *not* seek the enhanced sentence in 63% of such cases. *Id.* at 43. Thus, in the cases studied by the Sentencing Commission, the question whether a defendant in the position of Mr. Gonzalez-Ramirez would face a sentencing enhancement based on prior convictions was answered at the decision of the prosecutor.

The cases underlying the Sentencing Commission's conclusions are somewhat dated. But, as numerous jurists have recognized, the executive branch continues to maintain authority over sentencing to the exclusion of the judiciary in the mandatory minimum arena. *See* ABA Report at 5 (noting Justice Kennedy's statement that "[u]nder the federal mandatory minimum statutes a sentence can be mitigated by a prosecutorial decision not to charge certain counts"); *Green*, 2004 WL 1381101, at *32 ("It may be that, taken together, the ways in which the Guidelines regime have transferred the power of sentencing to the Department add up to a joining of the power to prosecute and the power to sentence in one branch of government."); *United States v. Dyck*, 287 F. Supp. 2d 1016, 1019, 1022 (D.N.D. 2003) (stating that "[t]he advent of mandatory minimum sentences...divest sentencing discretion away from the sentencing judge" and that "[j]udges and others involved in the criminal justice system must speak out against unjust and unwise mechanisms of justice such as...mandatory minimum sentences"); *United States v. Sidhom*, 144 F. Supp. 2d 41, 41 (D. Mass. 2001) (Harrington, S.J.) ("[T]he government, not only has the authority to prosecute crime and to decide the nature of the criminal charge to be preferred, but now has the power to determine the severity of the punishment. As a result,

courts are required to react passively as automatons and to impose a sentence which the judge may personally deem unjust."); *cf.* Associated Press, *Federal Judge Resigns, Calling Judicial System Unjust* (June 25, 2003), *available at*, http://www.famm.org/si_federal_sentencing_judge_martinoped_06_24_03.htm (reporting comments of retiring Judge Martin of the Southern District of New York that "Congress is mandating things simply because they want to show how tough they are on crime with no sense of whether this makes sense or is meaningful").

"In the long tradition of the common law, it was the judge, the neutral arbiter, who possessed the authority to impose sentences which [s]he deemed just within broad perimeters established by the legislature." *Sidhom*, 144 F. Supp. 2d at 41. This principle, with limitations, has been endorsed under our constitutional system, but, as a functional matter, it is completely eroded. This case is yet another example of the executive branch usurping the Court's sentencing authority. Upon the filing of the § 851 information in this case, the Court's role with respect to sentencing was short circuited at the twenty year level. The prosecutor has chosen what charges to file and decided what minimum sentence to impose. This violates the separation of powers doctrine as contemplated by the Supreme Court in *Mistretta*, and the sentence should therefore be barred.

### C. The Elimination of The Court's Ability to Make an Individualized Determination as to Mr. Gonzalez-Ramirez's Sentence Violates His Right to Due Process.

Just sentencing has traditionally contemplated an individualized consideration of the circumstances in each case. "It is necessary to individualize

each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion." *Burns v. United States*, 287 U.S. 216, 220 (1932). Such individualized treatment is a fundamental liberty interest. *See Dyck*, 287 F. Supp. 2d at 1021 (stating that "[t]he concept of individualized sentencing is deeply rooted in our legal tradition and is a fundamental liberty interest" and collecting cases in support of that principle). Accordingly, a "due process right arises at sentencing because sentencing involves the most extreme deprivation of personal liberty." *Id.*

The individualized determination that is constitutionally required for sentencing must look to a broad spectrum of factors. "The fair method of sentencing is for an impartial judge, who is fully cognizant of an individual defendant's personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime, to impose sentence after deep reflection, informed by the judge's experience in life and in the law." *Sidhom*, 144 F. Supp. 2d at 41-42; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender."); *United States v. Tannis*, 942 F.2d 196, 198 (3d Cir. 1991) (Higginbotham, J., concurring) ("Judges and legislators must always remember that ultimately we are not sentencing widgets or robots, but human beings.... [C]onvicted defendants should be sentenced within the spectrum of

what most able judges would consider fair and reasonable both for our society and for the sentenced defendant."); *Dyck*, 287 F. Supp. 2d at 1022 n.6 ("The fundamental respect for justice underlying the Fifth Amendment...requires consideration of the character of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of depriving a defendant of his life or liberty."); ABA Report at 27 (recommending that sentencing courts should be permitted to "consider the unique characteristics of offenses and offenders that may warrant an increase or decrease in a sentence").

Mandatory minimum sentences remove these core elements of just sentencing from the Court's consideration. As one court has noted, "[s]tatutory mandatory minimum sentences create injustice because the sentence is determined without looking at the particular defendant." *United States v. Patillo*, 817 F. Supp. 839, 841 (C.D. Cal. 1993). Under this "sledgehammer approach," it makes no difference whether the "defendant had rescued fifteen children from a burning building, or had won the Congressional Medal Of Honor while defending his country." *Id.* at 842; *see also United States v. Langmade*, 125 F. Supp. 2d 373, 374-75 (D. Minn. 2001) ("[M]andatory minimum sentences-almost by definition-prevent the Court from passing judgment in a manner properly tailored to a defendant's particular circumstances.").

- In this case, mandatory sentence, the Court is prohibited from considering any number of factors which *should* be relevant to arriving at a just sentence pursuant to § 3553 including the applicable guidline range of 151-188 months.

The mandatory minimum sentence violates Mr. Gonzalez-Ramirez's right to due process, and it should not be imposed.

D. Mr. Gonzalez-Ramirez's Prior Convictions Were Not Part of the Indictment and Were Not Proven to a Jury Beyond a Reasonable Doubt And May Not be Used to Enhance Mr. Gonzalez-Ramirez's Sentence Beyond The Otherwise Applicable Range.

The defendant maintains that the filing of the 851 Information in this case violates his right to indictment as contained in the Fifth Amendment to the United States

Constitution.

The Prior Convictions Used To Enhance The Defendant's Sentence Must Be Included In The Indictment

A. The Fifth Amendment Right To Indictment Includes Aggravating Factors, Including Prior Convictions.

The Fifth Amendment to the United States Constitution requires that "[n]o person shall be held to answer for a capital , or otherwise infamous crime, unless on a presentment or indictment of Grand Jury...". In the instant case, the filing of the 851 Information is a significant aggravating factor, one that dramatically changes the mandatory minimum sentence. The right to be charged by way of Grand Jury indictment includes aggravating factors. United States v. Davis, 380 F. 3d 821 (5th Cir. 2004); see also Ring v. Arizona, 536 U.S. 584 (2002), ( Arizona state aggravating factors must be found by a jury or sixth amendment violation occurs).

**B. Under 21 U.S.C. § 851 A Conviction, Which Must Be Proven Beyond A Reasonable Doubt, Is An Aggravating Factor That Must Be Charged By Way Of Indictment**

An examination of the text of 21 U.S.C. § 851 reveals that, where a defendant objects to the use of a prior conviction, the Government must prove the conviction beyond a reasonable doubt. This statutory burden of proof requirement implicates both the Fifth and Sixth Amendments to the United States Constitution. Even if 21 U.S.C. § 851 did not mandate proof beyond a reasonable doubt, there exists strong support for the notion that prior convictions, which are elements of an offense that must be plead and proven. The "prior conviction exception" in criminal law has existed for some time. See Almendarez-Torres v. United States, 523 U.S. 224 (1998). (Prior conviction was a penalty provision which need not be charged in indictment.) Almendarez-Torres was a close decision by the Supreme Court, 5 - 4. In his concurring opinion in Shepard v. United States, 544 U.S. 13 (2005), Justice Thomas expressed the view that

> *Almendarez-Torres*, like *Taylo*r, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided. [citations omitted]
>
> 544 U.S., at 28.

More recently, Justice Thomas much more forcefully voiced his opposition to the continued application of the "prior conviction exception" in a dissent from the denial of a writ of certiorari in Juan Rangel-Reyes *et al* v. United States, ___ U.S. ___, 126 S. Ct. 2873, 165 L.Ed. 2d 910 ( June 12, 2006).

> Last Term, I indicated that the Court should address the ongoing validity of the *Almendarez-Torres* exception in an appropriate case. *Shepard*, *supra*, at 28, 125 S. Ct. 1254, 161 L. Ed. 2d 205. Petitioners, like many other criminal defendants, have done their part by

> Specifically presenting this Court with opportunities to reconsider *Almendarez-Torres*. It is time for this Court to do its part.
>
> The Court's duty to resolve this matter is particularly compelling because we are the only court authorized to do so. See *State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S. Ct. 275, 139 L. Ed. 2d 199 (1997) ("It is this Court's prerogative alone to overrule one of its precedents"). And until we do so, countless criminal defendants will be denied the full protection afforded by the Fifth and Sixth Amendments, notwithstanding the agreement of a majority of the Court that this result is unconstitutional. There is no good reason to allow such a state of affairs to persist.

165 L. Ed 2d , at 911-12.

While the defendant realizes that the First Circuit has bypassed the Almendarez-Torres argument in every case in which it has been raised, [1] this scenario is different because of the statute involved, 21 U.S.C. § 851. The statutory framework outlined by 21 U.S.C. § 851 is distinguishable from those considered by the Supreme Court in both Almendarez-Torres and Shepard in that, if a defendant objects, the facts surrounding the proffered conviction must be proven beyond a reasonable doubt. Traditionally, sentencing factors must be proven by a mere preponderance of the evidence. The requirement that the 851 enhancement be proven beyond a reasonable doubt leads to the inescapable conclusion that, in this particular statutory framework, the prior conviction is indeed an element of the crime. It follows logically, then, that elements, as is the case with aggravating factors, must be pled in the indictment.

Further, because the prior convictions were not proven to a jury beyond a reasonable doubt, under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), they may not be used to so

[1] See United States v. McKenney, 450 F. 3d 39, 45-46 (1st Cir. 2006)

enhance the sentence. We acknowledge, again, that in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998), a five-member majority of the Supreme Court held that prior convictions which enhance a sentence need not be charged in the indictment and proven to a jury beyond a reasonable doubt, and that this holding was preserved in both *Apprendi* and *Blakely*. *See Blakely*, 124 S. Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The exception for prior convictions, as noted has been called into question and we raise this issue in the event the Supreme Court should resolve it favorably to Mr. Gonzalez-Ramirez.

2. Further §3553 Considerations

In fashioning a sentence that fulfills the purposes of 18 U.S.C. § 3553, the district court must also consider (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the range calculated under the now-advisory guidelines; (d) the need to avoid unwarranted sentencing disparities; and (e) the need for restitution. 18 U.S.C. § 3553(a)(1), (3)-(7). See United States v. Perry, 389 F. Supp. 2d 278; 2005 U.S. Dist. LEXIS 20230 (D. R.I. 2005); United States v. Dixon, 449 F.3d 194; 2006 U.S. App. LEXIS 12224 (1st Cir. Mass. 2006). Here it appears the defendant a 34-year-old man presents found guilty of conspiracy and aiding and abetting 5 kilograms or more of cocaine. The defendant has a family together with his wife including young children which he loves and lived with prior to his arrest, and of

whom he remains deeply concerned. See Presentence Investigation Report Paragraph 36. Such factors §3553 factors which are important to sentence imposition are gainsaid here with the application of §851.When considering §3553 factors, a judge should conduct a full and thorough investigation into the particular characteristics of the individual and any other factors that might be relevant to the statutory purpose of sentencing instead of rigidly relying on the guidelines. Koon v. Powell, 518 U.S. 81; 116 S.Ct. 2035; 135 L.Ed. 2d 392 (1996).

Fernando Gonzalez-Ramirez
By his attorney,
/s/George J. West__________
George J. West, #3052
One Turks Head Place, Suite 312
Providence, RI 02903-2215
Telephone: 401-861-9042
Facsimile: 401-861-0330
Email: Georgew180@aol.com
Date: May 2, 2007

---

CERTIFICATION

I hereby certify that on this 2nd day of May 2007, I forwarded a copy of the within Memorandum to Mary Rogers, Esq., A.U.S.A. mary.rogers@usdoj.gov, U. S. Department of Justice, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 via the USDC's ECF system.

/s/George J. West